THE STATE ex rel. ISAAC B. KIMBRELL v. CHARLES U. BECKER, Secretary of State.

In Banc, January 14, 1922.

1. **SENATORIAL COMMITTEE:** Obscure Statute. That portion of Section 4848, Revised Statutes 1919, declaring that "each county committee . . . shall meet . . . and organize by the election of one of its members as chairman . . . and the chairman so elected shall, by virtue thereof, become a member of the party congressional, senatorial and judicial committee of the district of which his county forms a part," does not constitute the chairman of the county committee of a county in which there are two senatorial districts the whole senatorial committee for

both districts; but the language of said statute is ambiguous and its meaning obscure.

*Held*, by GRAVES, J., with whom HIGBEE and ELDER, JJ., concur, that the statute is not ambiguous, but it has no application to a senatorial committee in a county in which are two senatorial districts, and as to such districts there is a clear legislative omission.

2. ———: ———: **Administrative Construction.** Where statutory ambiguities are somewhat balanced, courts resort to administrative or official construction. The officials of a local political party organization in a county having two senatorial districts are the administrators of a statute obscurely prescribing how the committee of its senatorial district shall be constituted; and the fact that said administrators have for fourteen years construed the statute against the contention of relator in mandamus that the chairman of the county committee does not constitute the whole senatorial committees for both districts, is important as pointing to its correct construction.

3. ———: **Legislative Omission: Party Option: Ambiguity.** That portion of the statute declaring that the chairman of the county committee shall "become a member of the party congressional, senatorial and judicial committee of the district of which his county forms a part," and providing that such chairmen shall alone compose the senatorial' committee, is, as respects the senatorial committee in a county having two senatorial districts, a clear legislative omission, and in such situation the party may act through such committee as it chooses; and if it has for fourteen years uniformly chosen to leave its senatorial district business to its county committee, it will not be held that the chairman of the county committee constitutes the whole committee for both senatorial districts.

*Held*, by GRAVES, J., concurring, with whom HIGBEE and ELDER, JJ., concur, that the statute providing that the chairmen of the several county committees shall compose the senatorial committee is not ambiguous, but has no application to a county in which are two senatorial districts, but fails and omits to provide a senatorial committee for the senatorial districts therein, and consequently the chairman of the county committee has no authority to determine the manner by which candidates should be selected, or to call primaries in the wards and townships or a convention to be made up of delegates from the wards and townships.

4. ———: **Two Possible Constructions of Statute: Administrative Interpretation: Representative Government.** Of two constructions of a statute of which its language may be said to permit, that one ought to be chosen which is indicated as correct by the long

practice under it of all officials charged with its execution, and which accords with the general scheme of representative government which the statute was designed to put in force.

5. **CERTIFICATE OF NOMINATION: Constitutional Convention.** Since the Amendment of 1920 prescribes that a "certificate of nomination" of a candidate for the Constitutional Convention shall be filed, a certificate which does not fall within the definition of "certificate of nomination" found in any statute is not sufficient.

6. **CONVENTION: No Notice.** Courts are reluctant to place the stamp of approval upon the nomination of a candidate for office by a convention to be composed of delegates selected at ward and precinct primaries of which primaries no official notice had been given and with respect to the calling of which no notice, official or otherwise, of the authority by which they were called was given, even though such action was inadvertently taken and there is nothing to indicate that an unfair advantage was intended.

> *Held,* by GRAVES, J., with whom HIGBEE and ELDER, JJ., concur, that mere news items in newspapers are not notices of official action and a convention to nominate a candidate for office called in pursuance to such items is void.

7. ————: **Other Candidate's Nomination: Mandamus.** In a suit by mandamus to compel the Secretary of State to accept and file certain papers which it is contended show that relator has been duly nominated as a candidate for an office at an approaching election, questions concerning the validity of the nomination of the candidate whom relator seeks to supersede are not involved, said other candidates not being a party and could not well be.

## Mandamus.

WRIT QUASHED.

*Henry S. Conrad, Leslie J. Lyons* and *Charles H. Thompson* for relators.

(1) The relator contends that inasmuch as the Constitutional Amendment provides that the manner of nominating party candidates for delegates to the Constitutional Convention shall be prescribed by the senatorial committee of the respective parties, that provision overrides all statutory provisions touching the particular

-matter of nominating candidates for delegates. In other words, the manner of selecting party candidates for delegates is specifically provided for in this amendment and all statutory provisions give way to it. Laws 1921, 712. The particular clause upon which we base our contention is the one providing that the candidates of each political party for delegates from a senatorial district shall be nominated in such manner as may be prescribed by the senatorial committee of the respective parties. (2) The senatorial committee in Jackson County is the chairman of the county committee. There are no other provisions except those found in said Section 4848 specifying who shall constitute the senatorial committee, and there are no provisions imposing any specific duties upon such senatorial committee. Section 4848 specifically provides that the chairman of the county committee shall become a member of the party  . . . senatorial  . . . . committee of the district of which his county is a part. No other member or members of the county committee is clothed with authority to act as a senatorial committee. We are unable to find in the statutes any duty imposed upon the senatorial committee specifically. The first duty that it has ever been given by legislative or constitutional enactment is the provision contained in the constitutional amendment involved here. The question reverts, therefore, to the issues as to whether or not under the provisions of this section of the statute Mr. Beardsley was in fact the senatorial committee, and whether he was authorized to act in accordance with the mandate of the constitutional provision. (3) In law, in legislative bodies, in societies and in corporations, a committee consists of one or more persons. It follows, therefore, that there can be no objection urged on the score that a committee cannot be one individual. 12 C. J. 150. (4) It is also true, as a matter of law, that where no specific number of persons are referred to as constituting a committee, and in a situation such as we have here, if one member of the Committee is duly appointed, acting and functioning as contemplated by the legislative act or constitutional mandate, then, and in that event, such single

individual should be permitted to act and discharge the duties imposed.  (5)  The court will observe that the provisions of Section 4848 are general and apply to the entire State.  It is perfectly apparent that the Legislature had in mind specifically Jackson County.  The very next clause of the section provides that if any congressional district shall consist wholly of one county, in such district the county committee shall constitute the congressional committee of such district.  Jackson County is the only county in the State that meets that situation; therefore, the Legislature had Jackson County in contemplation. The Legislature must also, of necessity, have known that Jackson County has and has had for many years two senatorial districts.  It cannot be said, therefore, that the language of the statute, awkward as it may be was not deliberately used.  In view of this situation, the Legislature was satisfied to entrust the work of the senatorial committee, whatever it might be, with the chairman of the county committee.  (6)  It is also perfectly clear that inasmuch as the constitutional amendment specifically provides that the manner of nominating candidates for delegates to the Constitutional Convention shall be prescribed by the senatorial committee, no other method of determining the manner of nominating candidates can be substituted.  (7)  The county committee is not authorized to act as a senatorial committee.  There is no provision any where in the statute directly or indirectly authorizing the county committee to act as a senatorial committee.

*Jesse W. Barrett,* Attorney-General, for respondent; *Platt & Marks* and *Clinton A. Welsch* of counsel.

(1)  Before relators are entitled to the issuance of a writ of mandamus it is necessary for them to show that they have a direct and personal interest in the matter involved.  State ex rel. v. Smith, 104 Mo. 661.  Relators must have a clear legal right to the thing demanded, and the burden is on relators to maintain the mandamus proceedings.  State ex rel. v. Stone, 269 Mo. 334; State ex rel. v. Hudson, 226 Mo. 239.  (2)  The certificates presented for filing by relators were not "executed with the formalities prescribed for the execution of an instrument affect-

ing real estate," as is prescribed by Sec. 4802, R. S. 1919.
(a)   They are in no way acknowledged, attested or au-
thenticated.   This alone, it would appear, justified the
refusal on the part of respondent.   State ex rel. v. Le-
sueur, 103 Mo. 253, and State ex rel. v. Lesueur, 136 Mo.
452, cited in Atkinson v. Lay, 115 Mo. 538, and Rollins v.
McKinney, 157 Mo. 656; Secs. 4802, 4823, R. S. 1919; State
ex rel. Punch v. Kortjohn, 246 Mo. 34. (b) The certificates
presented by relators for filing do not comply with Sec.
4803, R. S. 1919, by setting forth the residence and the
occupation of the relators and the office for which the re-
lators were nominated, nor do the certificates give the
residence of the signers thereof.   (c)   The certificate
rejected was not signed by any member or officer of the
senatorial committee or any other committee.   A reading
of the amendment authorizing the holding of the conven-
tion would make it appear that the senatorial committee
should make the certificate.   Sec. 4803, R. S. 1919.   (3)
Relator should have filed objections to the certificates of
nomination of Paul S. Conwell and Halbert H. McCluer,
and failing to do that within three days after the filing
of same, they are now precluded from doing so.   Sec.
4817, R. S. 1919; State ex rel. Farris v. Roach, 246 Mo.
56.   The method pointed out by Section 4817 is exclusive.
State ex rel. v. O'Donnell, 62 N. J. L. 35; State ex rel.
v. Piper, 50 Neb. 40; In re Cowie, 11 N. Y. Supp. 838;
In re Nash, 72 N. Y. Supp. 1057.   (4)   Jackson County
is not "a part" of any senatorial district.   It forms the
whole of two senatorial districts and therefore the pro-
vision of Section 4848, R. S. 1919, providing a chairman
of the county committee shall become "a member of the
party senatorial committee of the district of which his
county is a part" has no application.   Conceding the ut-
most, Mr. Beardsley as county chairman became "a mem-
ber of the senatorial committee of the district of which
his county is a part," which means that he and others
were members of a senatorial committee, but this con-
struction is so strained that it must be discarded because
Jackson County is not a part of any senatorial district.
(4)   Where a senatorial district is situated entirely with-

in a county or constitutes only a part of a county, its affairs, have by a custom which has been followed ever since the passage of the primary law been administered by the members of the county central committee from the wards and townships or parts of wards and townships constituting the senatorial districts as the senatorial committee. This custom is not in violation of any provision of the statute, but is in perfect harmony therewith, and is evidently exactly what it was contemplated would and should be done. (5) The proceedings instituted by relators herein are, in effect, an attempt to settle a factional difference between factions in the Republican party in Kansas City, and existing in said Republican County Committee, and an effort, to litigate an election contest by mandamus in this court, which does not have original jurisdiction to hear and determine by mandamus or any other manner except by an appeal in the proper case from the circuit court, or from the decision of the Secretary of State after he has acted upon objections timely filed to a certificate of nomination as provided for in Section 4817, R. S. 1919, where the parties whose interests are to be affected may be made parties to the action. State ex rel. v. Miles, 210 Mo. 127, 184. (6) The two alleged certificates deposited with the respondent by the relators herein, do not show that the Republican party took any legal steps or acted in a legal manner to make nominations to the office of delegate to the Constitutional Convention. Both fail to show that the Constitution and laws of the State have been complied with in any manner. It appears from the face of said certificates that they are void and of no legal effect. The so-called primary election to which the relators refer, and upon which they base their claims to the right of being classed as nominees to the office of delegate to the convention to revise and amend the Constitution, was held without any official notice having been given. It is admitted that the only notice that was ever given consisted of news items printed in newspapers as the result of diligent work of newspaper reporters. It is elemental that some kind of an official action and notice should have been had and given before an elec-

tion or primary can be considered valid. All action taken was solely by Mr. Beardsley; no committee acted upon or approved Mr. Beardsley's primary plan.

JAMES T. BLAIR, C. J.—Mandamus. The purpose of this proceeding is to compel respondent, the Secretary of State, to accept and file certain papers tendered by relator and contended by him to show that he is the nominee of the Republican Party in the Fifth Senatorial District for delegate to the approaching Constitutional Convention. It is shown by the briefs filed in this case and also appeared from the oral argument that the Secretary of State is in reality but a nominal party to this controversy. The parties really interested are the contending elements in the Republican organization in Jackson County, and by them and their counsel the case has been presented. The Attorney-General's appearance in the case was, therefore, merely formal. He made no argument and filed no brief. A return was duly filed and relator demurred thereto. The facts are thus settled by the pleadings, and the questions presented rise solely out of differences of opinion as to the law governing the case.

A statement of the essential facts as admitted by the pleadings is necessary. Jackson County contains two senatorial districts, the Fifth and Seventh. These two districts occupy the entire county and contain no territory outside the county. In August, 1920, the county contained more than 200,000 and less than 400,000 inhabitants. In the county is situated the city of Kansas City. It contains sixteen wards. Outside Kansas City there are seven townships. At the primary election in 1920 the voters of the Republican Party in Jackson County elected two committeemen from each of the sixteen wards in the city and from each of the seven townships in the county outside the city, forty-six in all. These forty-six constituted the Republican County Committee for Jackson County. One of these, a committeeman from the Twelfth Ward, resigned, and the remaining forty-five members of the committee elected Mr. Henry M. Beardsley, a gentleman of high standing and character, to fill the vacancy.

Mr. Beardsley, having thus become a member of the county committee, was thereafter elected by that committee to the position of chairman thereof. Subsequently, and folowing the enfranchisement of women, the county committee authoized and approved the election of a women's committee of two members from each ward in the city and each township in the county. These two committees worked together during the campaign of 1920. The membership of the two committees has remained the same until this time. Mr. Beardsley has continued to be and now is the chairman of the County Republican Committee. When the time came for the nomination of Republican candidates for delegates to the Constitutional Convention from the Fifth and Seventh senatorial districts, Mr. Beardsley was of the opinion that by reason of his being chairman of the Republican County Committee, he, in his proper person, constituted (1) the entire Republican Senatorial Committee in and for the Fifth Senatorial District, and (2) the entire Republican Senatorial Committee in and for the Seventh Senatorial District. It appears that this view was not concurred in by a majority of the Republican County Committee, of which Mr. Beardsley was chairman, Nevertheless, relator says, acting upon the view he entertained, Mr. Beardsley, in his asserted capacity as a senatorial committee for the two districts, or as two senatorial committees, one for each district, proceeded as such committee or committees, with the approval of the vice-chairman of the county committee, to decide and determine the manner in which the Republican nominees for delegates to the Constitutional Convention in the two districts should be selected, to-wit: "By nominating conventions composed of delegates chosen at a primary election to be held by said Republican Party in said senatorial districts in said county and state." No publicity is alleged to have been given this determination, but thereafter and on December 21, 1921, Mr. Beardsley, as county chairman, mailed to each member of the county committee and to each member of the women's committee a notice as follows:

291 Mo. Sup.—27

"It is necessary that the Republican Party in the Fifth and Seventh State Senatorial Districts, nominate immediately, out of each district, a Republican to be voted for at the coming election, as a member of the State Constitutional Convention. An advisory meeting is called for the membership of the Republican County Committee and of the Woman's Republican County Committee for 2 o'clock p. m. Saturday, December 24, 1921, at the Francis First Room, Baltimore Hotel, Kansas City, Missouri, at which time and place arrangements will be made for the nomination of such candidates. Be sure and be present at this meeting as it is a very important one. Faithfully yours

"HENRY M. BEARDSLEY,
"County Chairman."

At the time and place named in this notice but eleven of the forty-six members of the Republican County Committee and only fifteen of the forty-six members of the Women's Republican County Committee appeared. At the meeting on December 24, 1921, "the manner of determining the selection of delegates as theretofore determined upon by said Henry M. Beardsley, as said senatorial committee and as chairman of said Republican County Committee, and as also approved by said Hugh R. Ennis, vice-chairman, was unanimously approved and adopted by" the eleven members of the County Committee and the fifteen members of the Women's County Committee who were in attendance, "and the details and arrangements for said ballot primary so to be held for election of candidates for Republican delegates in each of said Fifth and Seventh senatorial districts were arranged for. It was determined that said primary election was to be held on the afternoon of Wednesday, December 28, 1921, from two to seven p. m., the voting places to be established in each ward or part of ward and each township or part of township in each of said two senatorial districts, and further that at said ballot primary delegates to the senatorial conventions should be elected, one delegate for each 1000 or fraction of 1000 votes cast for Hon. A. M. Hyde" in November, 1920. The number

of delegates to each convention was stated and the place of meeting for each convention determined and the time of meeting fixed as December 29, 1921.

Of what he had determined, acting as a senatorial committee or committees, or of what was approved or determined at the meeting at the Baltimore on December 24, 1921, Mr. Beardsley gave no formal notice to the Republicans of Jackson County. That is to say, neither as a senatorial committee or committees nor as chairman of the County Committee, nor otherwise, did he give or cause to be given or published any signed or formal notice of any action of his or of what had occurred at the meeting at the Baltimore or of the date or time of the primary or of the voting places which were selected. In fact, it does not appear from relator's allegations, except by inference, that either Mr. Beardsley or committee members fixed the voting places, and does not appear, in any event, which of them did so. News articles appeared in two papers and constituted the notice the public received.

In the Kansas City Star of Sunday, December 25, 1921, appeared a news item headed; ''A Code Vote By Ballot. Republicians will name senatorial delegates Wednesday. Representatives from Fifth and Seventh Districts will select Constitutional Convention delegates Thursday.'' The article which followed stated that:

''Ballot primaries will be employed by the Republicans of Jackson County to elect delegates to two senatorial conventions, which in turn will nominate two party candidates for district delegates to the Constitutional Convention.

''At a meeting yesterday of the men and women of the Republican County Committee, plans were made for the nomination of the Constitutional delegates.

''A Booth in Every Ward.

''The Committee adopted the suggestions of Henry M. Beardsley, chairman, for a ballot primary in each ward and township from 2 to 5 o'clock next Wednesday. One voting place will be provided in each ward and township, the locations to be announced to-morrow.''

The article then gave the number of delegates to be elected, and stated, in a general way, the dividing line between the two districts. "A loud objection" was said to have been made to the use of a certain hotel as a ward meeting place. It was stated that "volunteers—about two to each ward—must be obtained to take charge of the ballot boxes." It was also said that Mr. Beardsley suggested that "slates of delegates for the nominating conventions be selected in each ward and township and posted at the polling places." It also appeared from the article that the district conventions would be held at different places and that certain gentlemen, two of them, were mentioned for the nominations for the Constitutional Convention. This article appeared on an inside page of the paper's Sunday edition.

On Tuesday, December 27, 1921, there appeared in the Kansas City Journal an article under the headline: "Faction Fight for Delegates on tomorrow. Split Districts G. O. P. to vote separate sets at Primaries and Senatorial Conferences." An article followed which stated that twenty-four members of the county committee who claimed that Mr. Beardsley had no authority to direct the manner of selecting nominees for the Constitutional Convention had called a meeting of the county, senatorial and congressional committees of Jackson County for Thursday evening, and that organization Republicans would ignore the plans of Mr. Beardsley and the anti-organization faction to choose delegates in the manner already detailed. It was stated that "Mr. Beardsley announced his plans for selection of the delegates following a meeting of committeemen and committeewomen in his office the previous Saturday. He and his friends in the committee contend the meeting was legally called and that its decisions as to methods for selection of the Constitutional Convention delegates will stand." It was then stated that the organization faction said there were only thirty-one persons at Mr. Beardsley's Saturday meeting and that but eleven of these were members of the Men's County Committee; that the twenty-four organization members of the County Committee "at their meet-

ing Thursday night will take the position that in the two senatorial districts of Jackson County, the senatorial committees are composed of ward or township committeemen whose ward or township lies wholly or in part in the senatorial district. They point out that under the state law the senatorial committee is composed of the chairman of the 'county committees whose counties are within the senatorial district. Jackson County has two senatorial districts within itself. In St. Louis, where there are five senatorial districts within the city, the senatorial committees are composed of ward committeemen whose wards are within the senatorial district." The article then proceeds to forecast the method of nomination likely to be recommended by the organization committeemen, refers to an opinion of the Attorney-General that the Convention would be the judge of the eligibility of any member to sit; states that the organization Republicans have a majority of the County Committee, and refers to the Women's Committee, which both sides in this court agree and admit has no official standing in the Republican Party of Jackson County such as to give its voice or vote any weight in this controversy. This admission of the parties must be accepted by us as a fact in the case, and its accuracy is not now open to question or decision, because of that admission.

The Journal article also stated that Mr. Beardsley announced the location of the polling places in the wards and in six of the townships. In four wards two polling places, each, were designated. In each of the other twelve but one was named. In each of six townships one place was designated. In Brooking Township, it was said, no place had yet been selected.

On December 27, 1921, an article appeared in the Kansas City Times under the heading: "A G. O. P. Delegate Vote. Polls open five hours to-morrow in the fifth and seventh districts. Those elected will select one delegate from their respective senatorial division to State Constitutional Meet." The article restated the matter in the headlines, gave the hours of opening

and closing the polls, two to seven p. m., and the time and place of meeting of each district convention. Then followed a list of the polling places.

These articles constitute the notice given so far as the record shows. If any formal call for an election was made it does not appear in the record in this case.

Relator alleges, and it is not denied, that the ballot primaries were held as "so proposed and determined upon and that the delegates so elected" met in senatorial conventions which organized, and that for the Fifth District nominated relator in this case for the position of "Delegate to the Constitutional Convention." A certificate of nomination was prepared and signed by the chairman and secretary of the convention for the Fifth District. No acknowledgment or other formality was deemed necessary. This certificate was presented to the Secretary of State on December 30, 1921. That official, respondent here, refused to accept or file the certificate.

It appeared that respondent had already received and filed a certificate of nomination of a Republican from each senatorial district in Jackson County whose nomination papers showed they relied upon nominations which resulted from a manner of nomination determined upon by a majority of the members of the Jackson County Republican County Committee, Republican Congressional Committee, and, it is claimed, Republican Senatorial Committee. These certificates were on file with respondent when relator's certificate was presented. Respondent determined to leave the solution of the difficulty to the courts. The particular facts respecting the nominations of the gentlemen whose certificates were filed by respondent, need not, in the view we take of the case, be set out.

It is admitted by relator that he made no objection in writing to the nomination certificates on file prior to the expiration of the time for filing such certificates. It is also alleged by respondent and admitted by relator that "ever since the enactment of the general primary election law in 1907, it has been the universal usage, cus-

tom and practice of political central committees of the various cities and counties in this State of Missouri, and particularly of the Republican Party, in cities of the population and class of the City of St. Louis, Missouri, and in counties in the State of Missouri which constitute one or more state senatorial districts, and of Jackson County, Missouri, for such County Central Committee and committeemen, for their respective political parties, to act for and as such senatorial committees and committeemen in the various wards and townships, and parts of wards and townships in which they have been elected and selected as such county central committeemen within the various senatorial districts, and to fill any and all vacancies which may occur from death, resignation or other cause, and to certify the name so selected by a majority of the members elected as such committeemen, to the Secretary of State, and to otherwise act for and represent and act for their party in any and all matters between conventions duly called in conformity with the law.''

I. The case is one which it was necessary for counsel to present and the court to decide speedily since the names of the candidates must soon be certified out by respondent.

There is no disposition on the part of relator to question the settled rule that one who seeks relief by the writ of mandamus must show himself to have a clear legal right to the performance of the particular act the doing of which he seeks to compel. On the contrary, it is' relator's contention that he has met the requirements of this rule. His case has been presented with vigor and ability, and has been opposed in the same way.

Relator contends that (1) Mr. Beardsley, because he was chairman of the Jackson County Republican Committee, constituted the Senatorial Committee for that county for both the senatorial districts therein contained and was, therefore, exclusively empowered to determine the manner of selecting Republican nominees for the

Constitutional Convention; (2) that the notice given, if notice was required, was sufficient in all respects; (3) that the certificate of nomination presented was in due form under the law and presented in due time; and (4) that respondent should be compelled to receive and file the certificate of relator and certify it out in due course.

II.  The statute (Sec. 4848, R. S. 1919) which provides for party committees furnishes the basis for the difference of opinion in this case respecting Mr. Beardsley's claim that he, alone, constitutes the senatorial committee or committees for the Fifth and Seventh senatorial districts.  Counsel seem to agree that the amendment of 1921 (Laws of 1921, p. 378) has no application to this controversy.  The portion of Section 4848 in dispute reads:  "Each county committee . . . shall meet . . . and organize by the election of one of its members as a chairman . . . and the chairman so elected shall, by virtue thereof, become a member of the party congressional, senatorial and judicial committee of the district of which his county forms a part."  Relator contends that by virtue of this provision the chairman of the Jackson County County Committee is the entire senatorial committee or committees for the districts in that county.  Opposing counsel contend it shows a clear failure to provide for any statutory senatorial committees in Jackson County and thereby remitted the matter of party organization and control, so far as senatorial districts are concerned, to the parties themselves.  Counsel do not cite many authorities.  The contention of relator goes to the extent that the nominations made otherwise than under authority of Mr. Beardsley, as a committee, are entirely and wholly void.  The admission that in Jasper and Buchanan Counties  and in the city of St. Louis the parties, and particularly the Republican Party, have continuously, to the time of the filing of the return, acted on the theory that the county committees in the two counties and the members of the city committee in St. Louis constitute the. senatorial committees for those

counties and that city, involves an admission that nominations for delegates to the Constitutional Convention in those counties and in St. Louis have been made under authority of the county and city committees acting as senatorial district party committees. If this is true, and it is admitted, and if such action is void, the result might be one of considerable importance.

It is quite clear that Section 4848 does not in terms provide that the chairman of the county committee in Jackson County shall constitute the senatorial committee or committees for that county. If the chairman does become such committee or committees that result must be arrived at from a construction of statutory language which is somewhat ambiguous. On its face that language applies to a chairman of a county committee in a county which constitutes a part of a district. It is at least reasonably open to the construction that a county, like Jackson, which constitutes two entire districts and is not a part of any district, is not included in its language. We do not say that it might not be construed, also, to be intended to make general provision for the State and that its language simply evidences an inadvertent and awkward use of words to accomplish that end. In solving the question as to which of these intents was the legislative intent in passing the act there is little in the language of the statute to point to the one rather than the other. In these circumstances it is necessary to turn to such aids to construction as are legally available. The courts resort to administrative or official construction when statutory ambiguities are, as here, somewhat balanced. Of this statute the officials of the local party organization are the administrators. It is admitted in this case that for fourteen years both parties have construed it against relator's claim, and party action for all that time has been carried on upon the theory opposed to that contended for by relator's counsel. This, according to well known canons of construction, is of importance as pointing to the correct construction of an ambiguous statute. Further, the serious

character of the result of relator's construction, which has already been pointed out, is to be considered. In the circumstances, under the settled rules of construction, the statute is to be construed as presenting a simple case of legislative omission in so far as concerns senatorial committees in Jackson County. In that situation the party might act through such committee or committees as it chose. It is admitted it chose to leave its senatorial district business to the county committee. The fact that Section 4848 specifically provides that the county committee shall constitute the party congressional committee in counties like Jackson County does not point to either proffered construction as the correct one. It does not make a case for the application of the rule that the expression of one thing excludes another thing. If relator's construction of the quoted language were correct, the provision respecting the congressional committee would prevent the chairman of the county committee from becoming the congressional committee for a county like Jackson. If opposing counsel construe the statute correctly, then the clause respecting the congressional committee is to be viewed as of the time of its passage and is to be construed to prevent a political party in a county like Jackson from entrusting its affairs in the congressional district, as such, to any other than the county committee, acting as a congressional committee.

The construction given the statute in what has been said seems more in accord with the general idea of representative government, as extended to party affairs, and prevents the casting of a cloud upon several other nominations for the Constitutional Convention, which it seems to be admitted by the pleadings have been made on a theory contrary to that of relator. It is not to be understood that it is held that the Legislature could not have passed a statute of the meaning attributed to this one by relator had that body been so disposed. The conclusion simply is that of the two constructions of this statute which the language may be said to permit (and

no more can be claimed for the construction of relator) that one ought to be and is chosen which is indicated as correct by the long practice under it of all parties and party officials charged with its execution and which but accords with the general scheme of representative party government which the act of which'the statute in question is a part was clearly designed to put in force. It is, therefore, held that the county committee constituted the senatorial committee or committees, and that Mr. Beardsley was without authority to act as such committee or committees.

III.   Even had Mr. Beardsley constituted, alone, the senatorial committee or committees of Jackson County, as relator contends, there is another obstacle to the issuance of the peremptory writ. Relator points out that the Amendment of 1920 (Sec. 3, Art. XV, Laws 1921, p. 712) which authorized the calling of the approaching Constitutional Convention provides that "in order to secure representation from different political parties in each senatorial district, each political party as then authorized by law to make nominations for the office of State Senator in each senatorial district shall nominate only one candidate for delegate from such senatorial district, and such candidate shall be nominated in such manner as may be prescribed by the senatorial committee of the respective parties and a certificate of nomination shall be filed in the office of the Secretary of State at least," etc.

*Certificate of Nomination.*

By virtue of Section 4823, Revised Statutes 1919, all nominations for elective office must be made by primary election, *except* that this provision does not apply to special elections to fill vacancies, nor to county superintendents of schools, nor to city officers not elected at a general state election, nor to town, village or school district officers, Neither is it applied to the nomination of candidates for presidential elector. The effect of these exceptions is that there still exist several classes

of officers who lawfully may be and frequently are nominated by conventions of delegates. Under Section 4802 a certificate of nomination is defined, and one requirement is that it shall be executed with the formalities prescribed for the execution of an instrument affecting real estate. Section 4803 provides that certificates of nominations shall contain the name, residence and occupation of the nominee, the office for which he was nominated, and the name and residence of each signer. The certificate of nomination did not comply with either section. While these sections relate to nominations by primary elections they are the sections which, prior to 1919, also contained provisions relating to nominations by conventions. They are the only sections which define certificates of nominations in a way which could reasonably be applicable to convention nominations unless Section 4811 is applicable by force of its terms. It provides that certificates of nomination of candidates selected otherwise than by a primary shall be signed by electors resident within the district . . . to a number equal to one per cent of the vote cast in the last preceding election in such district. The certificates tendered by relator do not comply with this section. Whether or not these sections are intended to apply to convention nominations, they are the only provisions defining certificates of nomination which have been called to the attention of the court in this case. Even if the Chairman of the County Committee of Jackson County could be held to be the senatorial committee or committees for that county, he must still proceed according to the applicable law. He chose the delegate convention method of nominating candidates. This, as shown, is still a lawful method of nomination for many offices in this State. He thus exercised his power, assuming he had it, to prescribe the manner of nominating candidates of his party for delegates to the Constitutional Convention from the senatorial districts in Jackson County, by selecting a method known to our statute law. While, if he constituted the committee, he was authorized to pre-

scribe the *manner* of nominating such candidates, he
was not empowered to prescribe the character of the
certificate of nomination. On the contrary, the amend-
ments adds to the clause empowering the senatorial com-
mittee to prescribe the *manner of nomination* the clause,
"and a certificate of nomination shall be filed in the
office of the Secretary of State at least thirty days,"
etc. Since the amendment requires a certificate of
nomination and does not define it or authorize any one
else to prescribe its form, the existing statutes are to be
looked to for the purpose of discovering what a certifi-
cate of nomination is. It is defined by the statutes al-
ready pointed out, and in no case is a definition found
which includes the certificate tendered by relator. For
this reason also relator's case fails. We do not hold
that this would have affected relator's nomination if
respondent had filed his certificate and no objection had
been made thereto in the manner provided by Section
4817, Revised Statutes 1919. What is held is that since
relator's certificate does not fall within any definition
of "certificate of nomination" under our election laws,
he is in no position to compel respondent to accept and
file it.

IV. Another question is whether a nomination by
a convention of delegates selected at ward and precinct
primaries of which primaries no official notice had been
given and with respect to the calling of which primaries
no notice, official or other, was given of the au-
Notice. thority by which they were called, can be con-
sidered or treated as a party action, no matter what au-
thority Mr. Beardsley had. It is rather difficult to place
the stamp of approval upon a course of action, inad-
vertently taken no doubt, which has in it so much of
opportunity for unfair advantage. There is nothing
in the record to show anything of the kind was intended
or done in this case. Nevertheless, the method employed
will open the way to the taking of fractional advantage
and the suppression of the full expression of the popu-

lar will. The record shows no such intent in this case, but questions of this kind are not settled because in a particular instance the high character of the persons involved prevents the misdoing which approval of the course would permit and sanction in other circumstances.

V. There are other matters urged as sufficient to defeat relator's claims. These need not be considered in view of the conclusion already reached. Other Questions. Neither is there any question involved which concerns the validity of the nomination of the candidate whom relator seeks to supersede. That candidate is not a party to this proceeding and could not well be. Neither could any question concerning his nomination be raised in this case, which is merely one to compel respondent to file relator's certificate of nomination.

The alternative writ is quashed. *Walker, J.,* concurs; *David E. Blair, J.,* concurs in paragraphs 1, 2, 3 and 5 and the result; *Graves, J.,* concurs in a separate opinion in which *Higbee* and *Elder, JJ.,* concur; *Woodson, J.,* absent.

GRAVES, J. (concurring).—I concur in the result, and in all that our learned brother has written in this case, except such matters as I herein particularly note.

Section 3 of the Amendment to Article XV of the Constitution (Laws of 1921, page 712) in speaking of the nomination of a candidate for delegate by the respective parties says: "and such candidate for delegate shall be nominated in such manner as may be prescribed by the Senatorial Committee of the respective parties."

If senatorial committees have been provided for by law, this provision means these statutory committees. If such have not been provided by law, then this provision means such senatorial committee as party practice and custom have established. I understand my learned brother to so rule.

I do not agree with him where he apparently holds that Section 4848 is ambiguous so as to require the consideration of extraneous matter in order to give to it a construction.

The pertinent part of this statute reads: "Each county committee composed of the various ward and township committeemen, shall meet at the county seat of such county on the first Tuesday after the said August primary, and organize by the election of one of its members as chairman, and by electing a secretary and treasurer, who need not be members of said committee, and the chairman so elected shall, by virtue thereof, become a member of the party congressional, senatorial and judicial committee of the district of which his county is a part."

This is the only provision for senatorial committees in this statute. It has no application to Jackson County, because Jackson County, as a county, forms no part of any senatorial district. On the contrary it has two senatorial districts within its boundaries. Instead of saying that the statute is ambiguous, we should say that it is clear and plain so far as it goes. We should further say that the Legislature simply omitted and failed to provide a senatorial committee in counties like Jackson, or for the senatorial districts therein. It is a legislative omission pure and simple, and not an ambiguity in the law. The Legislature having failed to provide for the senatorial committees in these two districts in Jackson County, Beardsley had no authority in law to act at all. He had no authority to determine the manner by which candidates should be selected, nor to call primaries in the wards and townships, nor a convention made up of delegates from wards and townships. He, as chairman of the county /committee, had no more authority in this whole matter, than would the rankest stranger to the committee. Candidates named at such unauthorized convention show no title to the place.

Nor do I concur in the disposition of the matter of Beardsley's failure to give official notice (1) of the man-

ner determined for the selection of the candidate, (2) the time and place of the primaries, and (3) the time and place of the convention. Mere news items in newspapers are not notices of official action, so that even if it could, by any stretch of the law or of the imagination, be held that Beardsley was the whole committee in both districts in Jackson County, yet this failure would be vital to relator. The whole action of the convention would be void. The opinion moots this question, and does not decide it. It should be decided.

With these observations and reservations I concur.

*Higbee* and *Elder, JJ.,* concur in these views.